# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CHAMPION LABORATORIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 09 C 7251 |
| AMERICAN HOME ASSURANCE COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On or about October 16, 2009, Plaintiff Champion Laboratories, Inc. ("Champion") filed the present Complaint for Declaratory Judgment in the Circuit Court of Cook County, Chancery Division, against Defendant American Home Assurance Company ("American Home"). On November 18, 2009, American Home removed this matter to federal court pursuant to 28 U.S.C. §§ 1441, 1446, based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Before the Court is Champion's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and American Home's motion for summary judgment pursuant to Rule 56(c). For the following reasons, the Court grants American Home's motion for summary judgment and dismisses this lawsuit in its entirety. Accordingly, the Court dismisses Champion's Rule 12(c) motion as moot.

## BACKGROUND

Champion, as the named insured, filed the present lawsuit seeking a judgment declaring that the "personal and advertising injury" coverage of certain American Home Commercial General Liability policies obligates American Home, the insurer, to defend and indemnify

Champion in relation to a series of class actions lawsuits consolidated as *In re Aftermarket Filters Antitrust Litigation,* 08 C 4883. (R. 28-1, Def.'s Stmt. Facts ¶ 6.) This underlying multi-district litigation involves two consolidated class action lawsuits: (1) the consolidated direct purchaser complaint; and (2) the consolidated indirect purchaser complaint. (*Id.* ¶ 8.) These consolidated class action complaints allege that the named defendants, including Champion and Purolator Filters, N.A., LLC ("Purolator"), among others, manufacture and sell replacement oil, air, and fuel filters for use in light trucks and automobiles. (*Id.* ¶ 9.)

The direct purchaser complaint is brought on behalf of service stations and supply stores that purchased the filters for resale to consumers. (*Id.* ¶ 10.) The direct purchaser consolidated amended complaint states in relevant part:

> This case involves a nationwide conspiracy among the largest manufacturers of light duty (*i.e.*, automotive and light truck) oil, air and fuel filters for sale in the aftermarket (*i.e.*, the market for replacement filters) (collectively, "Filters"). In violation of Section 1 of the Sherman Act, Defendants and their co-conspirators unlawfully agreed to eliminate competition among themselves and to fix, raise, maintain and/or stabilize prices and allocate customers for Filters in the United States beginning on or around March 1, 1999 and continuing to the present ("Class Period"). Defendants' anticompetitive conduct in furtherance of the conspiracy, as alleged herein, included, but was not limited to, in-person meetings, telephone calls, facsimiles and other communications.

(R. 08 C 4483, 150-1, Consolid. Am. Compl. ¶ 1.)

The indirect purchaser complaint is brought on behalf of consumers who purchased the engine filters from the direct purchasers, namely, the supply stores and service stations. (*Id.* ¶ 11.) The indirect purchaser complaint similarly alleges:

> This action involves a conspiracy among the Defendants and their co-conspirators to fix prices and to engage in other unlawful practices intended to raise, maintain, and/or stabilize prices for replacement motor vehicle oil, fuel and engine air filters ("Filters").

2

(08 C 4843, R. 332-1, Second Amend Consolid. Indirect Compl. ¶ 1.)

In the context of the alleged price-fixing scheme, both the direct purchasers and indirect purchasers allege that:

> In or around October or November 2004, Defendants informed their respective Customers of the previously agreed-upon Filters price increase. In an attempt to conceal the conspiracy and the collusively coordinated price increase, Defendants "blamed" the increase on rising steel costs.
>
> At or around the same time, one of Champion's largest private-label customers questioned the need for another price increase in 2004. The customer also questioned Champion's explanation that rising steel prices necessitated the price increase. The customer requested that Champion provide it with an additional explanation justifying the price increase.
>
> The request created a serious dilemma for Champion. A few months earlier, Champion had introduced a new oil filter called eCore, twelve models of which fit 75% of the cars on the road. The eCore filter was made, in part, out of fabric *instead of steel*. Thus, Champion's oil filter input costs had actually decreased by approximately 20% because of its diminished need for raw steel in the manufacture of eCore oil filters.
>
> Instead of providing its customer with its eCore input prices, Champion gave its customer a Purolator spreadsheet for *Purolator's outdated input costs*, falsely representing Purolator's costs as its own. The spreadsheet satisfied the complaining customer. But more importantly, the spreadsheet concealed the true basis for the price increase: Defendants' unlawful price-fixing agreement.

(Consolid. Am. Compl. ¶¶ 80-83 (emphasis in original); *see also* Second Amend. Consolid. Indirect Compl. ¶¶ 106-109.) After the named defendants allegedly agreed to increase the filters' prices, they announced the price increases and informed their respective customers concerning the price increases. (Consolid. Am. Compl. ¶¶ 80, 84; Second Amend. Consolid. Indirect Compl. ¶ 102; Defs.' Stmt. Facts ¶¶ 15, 20.)[1]

---

[1] The direct purchasers' complaint does not allege that the named defendant filter manufacturers made public statements about the price increases. In addition, the court in the underlying class action dismissed the indirect purchasers' claims based on the defendant

3

Both consolidated complaints allege that as a result of the filters' manufacturers' conspiracies, the plaintiffs paid more than they otherwise would have paid for the engine filters that they purchased. (Def.'s Stmt. Facts ¶ 28.) The direct purchaser-plaintiffs allege a single cause of action for horizontal price fixing in violation of Section 1 of the Sherman Act. (*Id.* ¶ 29.) The indirect purchaser complaint alleges four causes of action: (1) violation of Section 1 of the Sherman Act; (2) unjust enrichment and disgorgement of profits; (3) violations of state antitrust laws; and (4) violation of state consumer protection and unfair competition laws. (*Id*. ¶ 30.)

The American Home polices at issue include Commercial General Liability Policy Nos. GL 480-57-04, GL 480-64-95, GL 574-52-69, GL 575-57- 11, and GL 159-53-42 effective for consecutive one-year periods from June 20, 2003 to June 20, 2008 ("American Home Policies"). (*Id.* ¶ 31.) Relevant to this lawsuit, the American Home Policies provide coverage for "personal and advertising injury" as defined in the American Home Policies. (*Id*. ¶ 34.) Specifically, Section I of Form CG 00 01 in the American Home Polices provides as follows with respect to "personal and advertising injury" coverage:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

---

manufacturers' public statements about the filters' prices. (*See* 08 C 4883, R. 426-1, Mem., Op., & Order, at 3.)

> b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*Id.* ¶ 35.) Further, the American Home Policies contain the following definition of the term "personal and advertising injury:"

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement;" or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(*Id.* ¶ 37.) The American Home Policies define the term "advertisement" as follows:

> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

(*Id.* ¶ 38.)

## LEGAL STANDARDS

Motions for judgment on the pleadings pursuant to Rule 12(c) differ from Rule 12(b) motions to dismiss because they are brought after the pleadings are closed. *See* Fed. R. Civ. P.

12(c); *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). Despite the difference in timing, the Court reviews Rule 12(c) motions under the same standards that apply to motions to dismiss under Rule 12(b)(6), viewing the facts in a light most favorable to the non-moving party. *See Buchanan-Moore,* 570 F.3d at 827; *see also Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007). When a Rule 12(c) motion for judgment on the pleadings is filed to dispose of a case based on "the underlying substantive merits," the proper legal standard is pursuant to Rule 56(c), except that the Court may only consider the pleading's contents. *See Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Under these circumstances, the Court cannot grant a Rule 12(c) motion unless no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Alexander,* 994 F.2d at 336.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"

6

*Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

**ANALYSIS**

At issue is whether American Home is obligated to defend Champion with respect to the underlying consolidated class action lawsuit. The parties agree that Illinois law applies to the Court's analysis in this diversity jurisdiction case. "Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. & Cas. Ins. Co.,* 581 F.3d 625, 628 (7th Cir. 2009) (citation omitted). "In Illinois, an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage." *National Cas. Co. v. Forge Indus. Staffing Inc.,* 567 F.3d 871, 874 (7th Cir. 2009). Therefore, when deciding "whether an insurer has a duty to defend" courts examine "the underlying complaint and the language of the insurance policy." *National Cas. Co. v. McFatridge,* 604 F.3d 335, 338 (7th Cir. 2010); *see also Ace Am. Ins. Co. v. RC2 Corp., Inc.,* 600 F.3d 763, 766 (7th Cir. 2010). "Any doubts as to whether particular claims fall within the policy are resolved in favor of coverage." *National Cas. Co. v. McFatridge,* 604 F.3d at 338 (citation omitted). "On the other hand, an insurer may refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *Id.*; *see also Nautilus Ins. Co. v. 1452-4 N. Milwaukee Avenue, LLC,* 562 F.3d 818, 821 (7th Cir. 2009).

"Under Illinois law, when interpreting an insurance agreement, the court's primary function is to ascertain and give effect to the true intentions of the contracting parties" and "[a]bsent some contrary indication from the terms of the agreement, undefined and unambiguous

7

terms are assigned their plain and ordinary meaning." *First Ins. Funding Corp. v. Federal Ins. Co.* 284 F.3d 799, 804 (7th Cir. 2002); *see also BASF AG v. Great Am. Assurance Co.,* 522 F.3d 813, 819, 822 (7th Cir. 2008) ("Insurance is a creature of contract, and as such, Illinois law is sensitive to the parties' intentions."). "[A]n ambiguity exists only if the insurance policy is susceptible to reasonable alternate interpretations." *First Ins. Funding Corp,* 284 F.3d at 804-05. Courts construe any such ambiguities "in favor of the insured and against the insurer that drafted the policy." *Id.* at 805 (citation omitted). "An insurer's duty to defend its insured is broader than its duty to indemnify" and "[i]f an insurer has no duty to defend, it has no duty to indemnify." *See National Cas. Co. v. McFatridge,* 604 F.3d at 338; *see also Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.,* 566 F.3d 689, 693 (7th Cir. 2009).

Here, Champion argues that the *Aftermarket Filters Antitrust Litigation* involves damages based on the "personal and advertising injury" coverage of the relevant policies, and thus American Home has a duty to defend Champion in the underlying class action lawsuit. In particular, Champion maintains that the allegations in the underlying consolidated class action complaints that refer to the filter manufacturers' price increase letters, public statements about the price increases, and Champion's communication of a competitor's price information to one of its customers fit within the relevant policies' coverage as "use of another's advertising idea in your 'advertisement.'" The Court thus turns to whether the conduct alleged in the class action complaints is at least arguably within the wrongful conduct defined as "use of another's advertising idea in your own advertisement" in the relevant American Home Policies. *See Del Monte Fresh Produce N.A., Inc. v. Transp. Ins. Co.,* 500 F.3d 640, 644 (7th Cir. 2007).

Under Illinois law, the use of an another's advertising idea "occurs when a business

8

wrongfully takes a competitor's idea about the solicitation of business." *Id.* at 646. Put differently, the use of another's advertising idea concerns "the wrongful taking of the manner by which another advertises its goods or services." *See Discover Fin. Servs., LLC v. National Union Fire Ins. Co.,* 527 F.Supp.2d 806, 823-24 (N.D. Ill. 2007) (citation and quotation marks omitted). Meanwhile, the definition of "advertisement" in the relevant American Home Policies states: "'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Defs.' Stmt. Facts ¶ 38.)

Construing the facts and all reasonable inferences in Champion's favor, no where in the *Aftermarket Filters Antitrust Litigation* class action complaints do the direct or indirect purchasers accuse Champion of using Purolator's, another competitor's, or plaintiffs' advertising ideas to sell their engine filters. *See Erie Ins. Group v. Sear Corp.,* 102 F.3d 889, 894 (7th Cir. 1996) (advertising involves actual, affirmative self-promotion of goods and services). Instead, the class action complaints allege that the engine filter manufacturers were in collusion to fix the price of the engine filters and that the indirect and indirect purchasers' damages arise from the artificial price increases. As such, the plaintiffs' damages in the underlying lawsuit do not arise out of Champion wrongfully taking defendants' or plaintiffs' advertising ideas. *See BASF AG,* 522 F.3d at 823; *Discover Fin. Servs.,* 527 F.Supp.2d at 823-24

Moreover, the allegation that Champion falsely used Purolator's outdated spreadsheet to cover-up the alleged price-fixing does not fall within the definition of "advertisement" under the American Home Policies because the communication containing Purolator's pricing spreadsheet was directed at one private label customer – not to the general public or a specific market

9

segment as required by the relevant insurance policies. (*See* Defs.' Stmt. Facts ¶ 38.) Also, Champion's alleged communication was not done for the purpose of attracting customers or supporters, but was to answer a specific customer's concern over the price increases. (*See id*.)

Champion also argues that the underlying complaints allege a commercial disparagement offense because the complaints allege that Champion made false statements about its products, thereby disparaging its competitors, namely, the other named defendants. In making its argument, Champion relies on the personal and advertising injury coverage for "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Under Illinois law, however, the common law offenses of slander, libel, or commercial disparagement require that the defendant made a false statement about the plaintiff or its products – not a third party as Champion argues. *See BASF,* 522 F.3d at 820; *see also Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 367 Ill.App.3d 48, 304 Ill.Dec. 693, 853 N.E.2d 770, 782 (2006) ("an action for commercial disparagement lies when the quality of [a business'] goods is demeaned"), *rev'd on other grounds,* 227 Ill.2d 381, 317 Ill.Dec. 855, 882 N.E.2d 1011 (2008); *see also Morningware, Inc. v. Hearthware Home Prods., Inc.,* 673 F.Supp.2d 630, 639 (N.D. Ill. 2009) (to state cause of action for commercial disparagement under Illinois law, plaintiff must allege that defendants made false and demeaning statements regarding plaintiff's goods or services).

Construing the underlying allegations in Champion's favor, neither the direct purchasers or indirect purchasers allege that Champion made libelous, defamatory, slanderous, or disparaging statements about any of the plaintiff class members or their products or services.

10

*See BASF,* 522 F.3d at 820.² Therefore, the plaintiffs' allegations in the underlying lawsuit do not sufficiently sketch a claim within the scope of the policies' coverage for "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *See id.*

In sum, from the language of the relevant insurance contracts, the parties could not have reasonably contemplated Champion's broad interpretation of the liability policies when they entered into these general liability policies. *See BASF AG,* 522 F.3d at 822-23. In other words, Champion's argument that the plaintiffs' allegations arose from an "advertising injury" or an injury based on commercial disparagement is an unreasonable and strained construction of the policies' language. *See Levy v. Minnesota Life Ins. Co.,* 517 F.3d 519, 523 (7th Cir. 2008) (Illinois courts will not adopt "strained, forced, unnatural, or unreasonable construction, or one which would lead to an absurd result") (citation omitted).

Because the allegations in the underlying class action complaints are clearly outside the bounds of the policy coverage, the Court grants American Home's summary judgment motion. *See National Cas. Co. v. McFatridge,* 604 F.3d at 338; *Nautilus Ins. Co.,* 562 F.3d at 821. Finally, because American Home has no duty to defend Champion under the general liability policies at issue, American Home does not have the duty to indemnify Champion. *See National Cas. Co. v. McFatridge,* 604 F.3d at 338. The Court thereby dismisses this lawsuit in its entirety.

---

² Champion's reliance on *Knoll Pharm. Co. v. Auto. Ins. Co.,* 152 F.Supp.2d 1026 (N.D. Ill. 2001) is misplaced in light of the Seventh Circuit's rejection of *Knoll*'s expansive reading of the relevant insurance policies and underlying complaints. *See BASF,* 522 F.3d at 822 ("following this approach would unmoor coverage determinations from the factual allegations of the complaint – something that Illinois law will not permit us to do").

11

## CONCLUSION

For these reasons, the Court grants Defendant American Home Assurance Company's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). The Court denies Plaintiffs' Motion for Partial Judgment on the Pleadings under Rule 12(c) as moot.

**Dated:** June 30, 2010

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Judge**